**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-1500
_____

JAVIER ARTACHE,
                                        Appellant

v.

SUPERINTENDENT SCI FOREST; ATTORNEY GENERAL PENNSYLVANIA;
DISTRICT ATTORNEY PHILADELPHIA
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-16-cv-03753)
District Judge: Honorable Nitza I. Quiñones Alejandro
_____

Argued: October 25, 2023

Before: PORTER, FREEMAN, and AMBRO, *Circuit Judges*

(Filed: December 7, 2023)


Jose L. Ongay **[ARGUED]**
600 W Germantown Pike,
Plymouth Meeting, PA 19462
        *Counsel for Appellant*

Katherine E. Ernst **[ARGUED]**
Philadelphia County Office of District Attorney
3 S Penn Square
Philadelphia, PA 19107
        *Counsel for Appellees Superintendent Forest SCI, Attorney General Pennsylvania,*
        *and District Attorney Philadelphia*

Ronald Eisenberg
Office of Attorney General of Pennsylvania
1600 Arch Street
Suite 300
Philadelphia, PA 19103
    *Counsel for Appellee Attorney General Pennsylvania*

Ethan H. Townsend **[ARGUED]**
McDermott Will & Emery
1007 N Orange Street
10th Floor
Wilmington, DE 19801
    *Court-Appointed Amicus Curiae*

_____

**OPINION**[*]
_____

PORTER, *Circuit Judge*.

The District Court denied Javier Artache's petition for writ of habeas corpus but issued a certificate of appealability (COA) for the claim that his trial counsel was ineffective under *Strickland v. Washington*, 466 U.S. 668 (1984). Because Artache fails to show that counsel's alleged error prejudiced him, we will affirm.

I

Artache was convicted of murdering David Delgado, who was shot in the head in the early hours of September 20, 2006.

---

[*] This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding precedent.

A

The shooting took place in Philadelphia on the 600 block of 17th Street, a one-way street heading from north to south. This block is intersected perpendicularly by Wallace Street (to the north) and Mount Vernon Street (to the south), which both run east-west.

The morning of the shooting, Delgado, Kathy Cerveny, and Anthony Carbonaro were smoking crack cocaine at a house on Wallace Street, less than one block to the east of 17th Street. Delgado and Cerveny left this house and walked one block to Artache's home on Mount Vernon Street, intending to ask him for money to buy more crack. According to Cerveny, Delgado and Artache began to argue after they arrived. Artache went upstairs to his apartment. When he came back downstairs, he told Cerveny to wait on the porch, and then Artache and Delgado walked along Mount Vernon Street to 17th Street.

After Artache and Delgado rounded the corner, just out of Cerveny's sight, she heard a gunshot. Moments later, Artache ran eastward back toward Cerveny on Mount Vernon and grabbed a bicycle, exclaiming "they're after me, they're after me." Then he pedaled westward along Mount Vernon, in the direction of the gunshot. Cerveny found Delgado with a bullet hole in his head. Soon after, she waved down a police officer to report the shooting.

B

Artache fled to Puerto Rico after the shooting. The police obtained a warrant for his arrest but could not locate him in Philadelphia, so they deemed him a fugitive. Almost two years later, he turned himself in to Puerto Rican authorities upon the advice of his

father, a police officer in Puerto Rico. He waived his right to jury trial and was given a bench trial in the Court of Common Pleas of Philadelphia County.

Cerveny was the prosecution's key witness. She testified that she did not see anyone aside from Artache and Delgado on Mount Vernon Street or 17th Street before she heard the gunshot. And she testified that she did not see or hear any cars driving on those streets immediately after the gunshot, nor did she see anyone pursuing Artache.

Carbonaro was also a witness for the prosecution. At the time of the shooting, he was outside of the house on Wallace Street where Delgado and Cerveny had gathered earlier that morning. From where he was sitting, he could see the intersection between Wallace Street and 17th Street. He heard the gunshot. Like Cerveny, he testified that he did not see anyone else on the street before he heard the gunshot. App. 169 ("We were the only ones out at that time."). And he testified that he did not see any cars driving on Wallace Street or 17th Street immediately after the gunshot. Artache's lawyer pressed him on cross-examination, suggesting that he "cannot say beyond any doubt that a car may not have gone down Seventeenth Street." App. 179. But Carbonaro answered, "Honestly, I think I can[,]" as "[t]here was nobody else out" at the time. *Id.*

The defense presented Lindsey Rosenberg, who lived in an apartment on 17th Street between Wallace Street and Mount Vernon Street. Rosenberg testified that she was awakened on the morning of the murder by voices outside of her apartment. She then heard a gunshot. And "roughly ten seconds" after the gunshot, she heard "a car taking off at a high speed." App. 192.

4

Relying largely on Rosenberg's testimony, Artache's lawyer theorized that someone other than Artache shot Delgado and then drove away in a car. He described Rosenberg's testimony as "the key most important factor in [the] case," because it alone "raises a reasonable doubt" regarding Artache's guilt. App. 203, 204. This was due to the possibility that "the person or persons in [the] car" that Rosenberg heard "were the doers in this case." App. 204. According to his theory, Artache fled to Puerto Rico because he had just seen a person murdered and believed that the shooters were after him as well.

At closing argument, the prosecutor asked the judge to infer guilt from Artache's failure to report the murder, saying, "His father testified, Look, as a cop for 27 years, I would say you have to come forward and tell them what you know. There's a reason why the defendant didn't say anything about this." App. 207. Defense counsel immediately objected: "I object as to what the defendant said or may have said or not said. That's a Fifth amendment privilege." App. 207. The judge instructed the prosecutor to "[k]eep going." App. 208.

After closing arguments, the judge explained her decision. She began by revisiting defense counsel's Fifth Amendment objection and rebuked the prosecution for mentioning Artache's silence:

> Let me start first with the fact that the prosecutor's unintended indirect oblique and not meant at all comment on Mr. Artache's silence has been ignored by the court. But I know Mr. Zarallo [the prosecutor] would be much more careful with a jury in the box and would have restructured his sentence so it did not appear to be a comment on silence. Mr. Silverstein and Mr. Rivera [defense counsel] are quite comfortable that I have ignored it. It doesn't impact me in the least.

App. 209.

She then began to explain her interpretation of the facts. She credited Cerveny's testimony, despite her "drug history and living a less than honorable lifestyle[.]" App. 209. She found that "[e]verything else in this case corroborates . . . Cerveny[,]" including Carbonaro's and Rosenberg's testimonies. *Id.* Crucially, she determined that the car reported by Rosenberg was a "red herring." *Id.* She believed Cerveny, who testified that she did not see or hear a car on 17th Street after the shooting. *Id.* ("[I]f she heard a car on 17th Street, Kathy Cerveny would have told me about it."). She acknowledged the possibility that Rosenberg heard a car somewhere in the neighborhood but concluded that "[t]hat car was not on 17th Street, wherever [it] was." *Id.* She therefore rejected the defense's theory that Delgado's killer fled in the car that Rosenberg heard. "Nothing moved" on 17th Street other than Artache and Delgado. App. 210.

And she was suspicious of Artache's choice to flee toward the scene of the crime and disappear for over a year, saying:

> And while it may be reasonable for people to run from gunshots, A, it's not reasonable to bike back towards where the gunshots were. Which is the undisputed testimony that he biked back towards the scene. And B, you don't run for two years. You don't run for two years.

App. 209–10.

But moments later, the judge appeared to refer to Artache's decision to remain silent after his arrest: "And even if you did run for some logical reason for two years, when you get busted, you tell what you know because you're a witness. You're a witness. You're a witness." App. 210. This time, Artache's lawyers did not object.

6

The judge then declared that Artache was guilty of first-degree murder and sentenced him to life imprisonment without parole. The Court of Common Pleas entered judgment on April 14, 2010.

C

Artache appealed his conviction. He argued that it was based on insufficient evidence and against the weight of the evidence because he lacked the requisite intent for first degree murder.

The trial judge prepared a written opinion in response to Artache's appeal. She recounted the facts without referring to Artache's decision to remain silent after arrest. Most importantly, she repeated her conclusion that Artache and Delgado were alone on 17th Street at the time of the shooting. *See* App. 419 n.3 ("It was between 5am and 6am and no one else was in the area."); App. 421 ("No one else was on the street at that time."). To support her conclusion, she cited to the testimonies of Cerveny, who saw no one at the intersection of 17th Street and Mount Vernon Street, and Carbonaro, who saw no one at the intersection 17th Street and Wallace Street.

The Superior Court affirmed the conviction. The Pennsylvania Supreme Court denied Artache's petition for allowance of appeal.

D

Artache sought collateral review. He filed a pro se petition in state court under the Pennsylvania Post Conviction Relief Act (PCRA). Counsel was appointed. Artache specifically asked PCRA counsel to add a Fifth Amendment claim to his PCRA petition. He wrote, "it seems like [the trial judge] relied on the fact that I didn't give any statement

to the police to find me guilty," citing the trial transcript. App. 237. Artache asked his lawyer whether the comment "constituted a violation of my Fifth Amendment right to remain silen[c]e?" *Id.* PCRA counsel considered the argument, but he did not believe that there was any merit to the claim, so he did not include the issue in the PCRA petition. Instead, he amended the petition to request relief based on an unlawful waiver of the right to a jury trial.

The Court of Common Pleas denied Artache's petition. The Superior Court affirmed. And the Pennsylvania Supreme Court denied a petition for allowance of appeal of the PCRA dismissal.

Artache then sought relief in federal court. Between July and September 2016, he filed four petitions for a writ of habeas corpus under 28 U.S.C. § 2254. In an amended, pro se petition filed on September 2, 2016, Artache asserted, for the first time, a claim of ineffective assistance of trial counsel based on counsel's "fail[ure] to object to the trial court's usage of [his] post-arrest silence to infer consciousness of guilt." App. 291–92. On February 7, 2017, Artache submitted a counseled memorandum in support of his habeas petition claiming that direct appeal and PCRA counsel were ineffective for failing to assert that the trial court violated his right to remain silent.

The District Court denied Artache's petition for writ of habeas corpus. But it granted Artache a COA as to whether he "received ineffective assistance of counsel with respect to his underlying Fifth Amendment claim." App. 7 n.2.

Artache appealed and the Commonwealth, confessing error, recommended that we grant the appeal. Because "[i]t is the uniform practice of [a federal court] to conduct its

8

own examination of the record in all cases where the Federal Government or a State confesses that a conviction has been erroneously obtained," *Sibron v. New York*, 392 U.S. 40, 58 (1968), we appointed Amicus to present counterarguments.[1]

## II[2]

Artache claims that trial counsel was ineffective for failing to object to the judge's reference to his silence. To succeed on this claim, Artache must show both that his "counsel's representation fell below an objective standard of reasonableness" and that he was prejudiced by counsel's error. *Strickland*, 466 U.S. at 688, 692. He fails to show the latter, so we will affirm.[3]

## A

To show prejudice under *Strickland*, Artache must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

---

[1] Mr. Townsend has ably discharged his assigned responsibilities as amicus curiae. We thank him for his assistance.

[2] The District Court had jurisdiction under 28 U.S.C. §§ 2241 and 2254. We have jurisdiction under 28 U.S.C. §§ 1291 and 2253. Because the Fifth Amendment question was not adjudicated on the merits in state court and the District Court did not hold an evidentiary hearing, our review is plenary. *Baxter v. Superintendent Coal Twp. SCI*, 998 F.3d 542, 546 (3d Cir. 2021) ("[W]e need not apply the deferential standard of review set forth in [AEDPA]."). But we presume that the state court's factual findings are correct absent a showing of clear and convincing evidence to the contrary. *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001).

[3] Because Artache fails to show prejudice, we need not address whether his counsel's performance was objectively unreasonable. Nor will we address whether (1) Artache forfeited his trial counsel ineffectiveness claim by failing to include it in the counseled memorandum in support of his habeas petition; (2) the COA covers an ineffectiveness claim under the Pennsylvania Constitution, not only the Fifth Amendment; (3) Artache procedurally defaulted the ineffectiveness claim by failing to raise it in PCRA; and (4) the trial judge's comment violated Artache's right to remain silent under the Fifth Amendment or the Pennsylvania Constitution.

would have been different." *Id.* at 694. He need not show that the alleged error "more likely than not altered the outcome in the case." *Id.* at 693. But he must show something more than "that the errors had some conceivable effect on the outcome of the proceeding." *Id.*

In applying the "reasonable probability" standard, we "must consider the magnitude of the evidence against the defendant." *Buehl v. Vaughn*, 166 F.3d 163, 172 (3d Cir. 1999). After all, "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Strickland*, 466 U.S. at 696. But we may not disturb any of the trial judge's findings that were "unaffected by the errors." *Id.* at 695. That is, we are not free to re-weigh the entire trial record and draw wholly new inferences. Rather, we must identify the trial judge's inferences that were not tainted by the alleged error and take those "unaffected findings as a given." *Id.* at 696. Then, after excising the tainted inferences and findings, we must "ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different." *Id.*

B

In this case, most of the inferences drawn by the trial judge were unaffected by the alleged error. Of these untainted findings, the most important was that "the car [Rosenberg] heard was not on 17th Street[,]" App. 209, or, more emphatically, that "[n]o one else was present on the street at the time" of the shooting. App. 425.

The record does not indicate that the judge drew this inference because of Artache's silence. Instead, she drew this inference because Cerveny was a credible

10

witness, and her testimony was corroborated by every other witness. Cerveny had a view of the intersection between Mount Vernon Street and 17th Street. She testified that she did not see anyone leaving the scene of the shooting aside from Artache. The judge credited Cerveny's testimony because she "had no ax to grind with Javier Artache." App. 209. Thus, even if Rosenberg heard a car speed off after the shooting, the judge concluded that it did not pass through the intersection of Mount Vernon Street and 17th Street—if it had, Cerveny "would have told [her]." *Id.* And because 17th Street is a southbound one-way, any car fleeing the scene of the shooting and driving in the proper direction would have passed through that intersection.

Moreover, the judge concluded that "[n]o one else was on the street" because Cerveny's testimony was corroborated by the testimony of other witnesses, including Anthony Carbonaro. App. 421 (citing to Carbonaro's testimony). Carbonaro testified that, at the time of the shooting, he was sitting outside on Wallace Street, with a view of the intersection of Wallace and 17th Street. The shooting occurred on 17th Street between Wallace Street and Mount Vernon Street. Thus, if a car sped away from the shooting in the wrong direction on 17th Street, northbound, it would have passed through the intersection that Carbonaro could see. But like Cerveny, Carbonaro did not see a car nor other people leaving the scene of the shooting.

Altogether, if a car fled the scene of the shooting, either Cerveny or Carbonaro would have seen it. But neither one saw any cars, and the trial judge credited their testimonies. She found that the "witnesses are absolutely consistent" in testifying that "[n]o cars moved on 17th Street" after the shooting—indeed, that "[n]othing moved"

11

other than Artache and Delgado. App. 210. In her written opinion, she cited to Cerveny and Carbonaro's testimony to support this inference. It was therefore drawn entirely from witness testimony, not from Artache's choice to remain silent.

Also unaffected were the judge's inferences from Artache's odd behavior after the shooting. The judge noted that Artache immediately rode his bicycle back toward the scene of the shooting. Then he suddenly fled to Puerto Rico, staying for nearly two years. She found that this behavior suggested Artache was the shooter, not a mere eyewitness.

C

After weighing these untainted findings, we conclude that Artache has not satisfied his burden to show prejudice. As *Strickland* requires, we weigh these findings without considering Artache's silence after his arrest.

Artache's theory at trial was that the real shooter fled in the car that Rosenberg heard. But the trial judge rejected this theory. And Artache did not present any other evidence suggesting the presence of anyone else on 17th Street. The Commonwealth argues that "there likely was at least once [sic] person around that corner—the drug dealer the two men were going to buy from." Appellees' Reply Br. at 15. But the Commonwealth did not cite to the trial record for this proposition. Nor could it have. There was no testimony whatsoever that Artache and Delgado were meeting someone on 17th Street between Mount Vernon Street and Wallace Street. Thus, the possibility that Artache was a mere witness to the shooting was highly remote, even without considering Artache's behavior after the shooting.

12

The remaining untainted findings, including the direction in which Artache bicycled and his flight to Puerto Rico, make this possibility even more remote. The Commonwealth suggests that "the direction that Artache fled was not strong evidence of guilt given Rosenberg's testimony suggesting that the shooter immediately left the scene by car." Appellees' Br. at 33. But the Commonwealth neglects to credit the judge's unaffected finding that no car left 17th Street after the shooting and nobody else was in the vicinity, which *Strickland* requires us to accept as true. The direction of Artache's bicycle ride—toward the only location where the real shooter could have been—is therefore inexplicable if Artache was a witness frightened for his own safety. And while the Commonwealth suggests that the circumstances and duration of Artache's sudden flight to Puerto Rico were "equivocal," we agree with the trial judge that it is more likely inculpatory. Appellees' Reply Br. at 16.

Without considering Artache's silence, therefore, it is not "reasonably likely" that an objective decisionmaker would acquit him. *Strickland*, 466 U.S. at 696. Cerveny's and Carbonaro's testimonies, as credited by the judge, establish that no car left 17th Street after the shooting. And there is no evidence in the record suggesting that anyone else was on 17th Street, whether in a car or on foot. This makes it highly likely that Artache and Delgado were the only people outside on 17th Street at the time of the shooting and hence highly likely that Artache was the shooter. His counterintuitive flight toward the crime scene and his two-year flight to Puerto Rico only strengthen that conclusion.

13

\*\*\*\*\*

Accepting the trial judge's untainted findings as true, Artache cannot show that trial counsel's alleged error prejudiced his defense. So we will affirm the District Court's denial of Artache's petition for writ of habeas corpus.